**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRADLEY DRAKE<br>60213 Bliss Road<br>New Concord, OH 45239<br><br>Plaintiff,<br><br>v.<br><br>SELECT ENERGY SERVICES, LLC<br>11351 E Pike Road<br>Cambridge, OH 43725<br><br>**Serve Also:**<br>Select Energy Services, LLC.<br>c/o Capitol Corporate Services, Inc.<br>4568 Mayfield Rd, Ste. 204<br>Cleveland, OH 44121<br><br>-and-<br><br>HECKMANN WATER RESOURCES (CVR), INC.<br>3366 Riverside Drive, Suite 103<br>Upper Arlington Oh 43221<br><br>-and-<br><br>COLE SIDDLE<br>c/o Select Energy Water Service<br>11351 E Pike Rd<br>Cambridge, OH 43725<br><br>-and-<br><br>JUSTIN MOORE<br>c/o Select Energy Water Service<br>11351 E Pike Rd<br>Cambridge, OH 43725<br><br>Defendants. | ) | CASE NO.<br><br>JUDGE:<br><br>**<u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>**<br><br>**<u>JURY DEMAND ENDORSED HEREIN</u>** |

Plaintiff, Bradley Drake, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

## PARTIES, JURISDICTION & VENUE

1. Drake is a resident of the city of New Concord, Muskingum County, Ohio.
2. Defendant Heckmann Water Resources (Cvr), Inc. ("HWR") is a foreign-limited liability company that conducts business within the state of Ohio.
3. Defendant Select Energy Water Service ("Select Energy") is a foreign-limited liability company that conducts business within the state of Ohio.
4. Drake was employed by HWR and Select Energy.
5. Select Energy purchased HWR.
6. Heckman Water Resources and Select Energy Water Service are hereinafter referred to as "Select Energy".
7. The relevant location at which the events and omissions of this Complaint took place was 11351 E Pike Road, Cambridge, OH 43725.
8. Select Energy is, and was at all times hereinafter mentioned, Drake's employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C §2000e and R.C. § 4112 et seq.
9. Upon information and belief, Defendant Cole Siddle, is a resident of the state of Ohio.
10. Upon information and belief, Defendant Justin (Last Name Unknown), is a resident of the state of Ohio.
11. Defendant Siddle is, and was at all times hereinafter mentioned, an owner, manager, supervisor, and/or agent of Select Energy, and as such, an employer within the meaning of R.C. §4112.02(J).

12. Defendant Moore is, and was at all times hereinafter mentioned, an owner, manager, supervisor, and/or agent of Select Energy, and as such, an employer within the meaning of R.C. §4112.02(J).
13. Defendant Siddle did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Select Energy and/or within the scope of his employment at Select Energy.
14. Defendant Justin Moore did, and at all times hereinafter mentioned, acted directly or indirectly in the interest of Select Energy and/or within the scope of his employment at Select Energy.
15. At all relevant times referenced herein, Defendant Siddle supervised and/or controlled Plaintiff's employment at Select Energy.
16. At all relevant times referenced herein, Defendant Justin Moore supervised and/or controlled Plaintiff's employment at Select Energy.
17. Within 300 days of the adverse employment actions described herein, Drake filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 535-2022-01336 ("EEOC Charge").
18. On or about April 7, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Drake regarding the EEOC Charge.
19. Drake received the Notice of Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 200e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.
20. Drake has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.
21. Drake has properly exhausted all administrative remedies pursuant to 29 C.R.F. § 1614.407(b).

22. All of the material events alleged in this Complaint occurred in or around Guernsey County, Ohio.
23. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and/or (3).
24. Venue is proper pursuant to Civ. R. 3(C)(1), (2), (3), and/or (6).
25. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

**FACTS**

26. Drake is a former employee of Defendants.
27. Drake is African American.
28. Drake, as an African American, is in a protected class for his race.
29. On or about September 4, 2021, Drake began working for Defendants.
30. Drake's job title was Well Tender.
31. During his employment with Defendants, Drake worked overtime.
32. Drake's supervisors began discriminating against him due to his race.
33. Defendants Siddle and Moore were Drake's supervisors.
34. Siddle is Caucasian.
35. Siddle was Drake's supervisor.
36. Moore is Caucasian.
37. Moore is the general manager for Select Energy.
38. Moore did not make the decision to hire Drake.
39. Moore treated Drake differently because of his race.
40. Moore refused to shake Drake's hand when they met.

41. Moore treated Drake with suspicion and hostility.
42. Moore berated and yelled at Drake using vulgar and profane language.
43. Moore and other Select Energy employees used racial slurs.
44. Moore and other Select Energy employees used the word "Nigger."
45. Moore mockingly joked that Select Energy employees were no longer allowed to say "Nigger" because "they have a black boy working here now" and laughed about it with other Select Energy employees.
46. In October 2021, Drake complained about Moore's hostile and discriminatory behavior to Siddle and Select Energy Human Resources (HR). ("First Complaint of Hostile Work Environment").
47. During Drake's First Complaint of Hostile Work Environment, Drake gave specific examples of Moore and other Select Energy employees' hostile and racially discriminatory behavior.
48. After Drake's First Complaint of Hostile Work Environment, Siddle and HR assured Drake that they would investigate his claims.
49. Siddle failed to investigate Drake's claims.
50. HR failed to investigate Drake's claims.
51. Siddle failed to take prompt remedial action.
52. HR failed to take prompt remedial action.
53. Moore was not disciplined as a result of Drake's reports of racial discrimination.
54. No Select Energy employee was disciplined as a result of Drake's reports of racial discrimination.
55. Moore's employment was not terminated as a result of Drake's reports of racial discrimination.

56. No Select Energy employee was terminated as a result of Drake's reports of racial discrimination.

57. Select Energy allowed Moore and other employees to continue harassing and discriminating against Drake.

58. Defendants have a policy against racial harassment ("Racial Harassment Policy").

59. Defendants' Racial Harassment Policy precludes retaliation against employees who complain about racial harassment.

60. Alternatively, retaliation against employees who complain about racial harassment is permitted by Defendants.

61. Defendants' Racial Harassment Policy precludes intimidation against employees who complain about racial harassment.

62. Alternatively, intimidation against employees who complain about racial harassment is permitted by Defendants.

63. Defendants' Racial Harassment Policy requires employees to report what they reasonably believe is a violation of the Racial Harassment Policy.

64. Defendants' Racial Harassment Policy precludes retaliation against employees who report a violation of the Racial Harassment Policy.

65. Alternatively, retaliation against employees who report a violation of the Racial Harassment Policy is permitted by Defendants.

66. Defendants' Racial Harassment Policy precludes intimidation against employees who report a violation of the Racial Harassment Policy.

67. Alternatively, intimidation against employees who report a violation of the Racial Harassment Policy is permitted by Defendants.

68. Moore's behavior violated the Racial Harassment Policy.

69. The behavior of other Select Energy employees violated the Racial Harassment Policy.

70. Defendants have a policy to investigate reports of violations of its Racial Harassment Policy.

71. An investigation should include interviewing the complainant.

72. An investigation should include interviewing the subject of the complaint.

73. An investigation should include interviewing the subject of the reported harassment.

74. An investigation should include interviewing witnesses to the reported harassment.

75. An investigation should include getting a written statement from the complainant.

76. An investigation should include getting a written statement from the subject of the complaint.

77. An investigation should include getting a written statement from the subject of the reported harassment.

78. In response to Drake's First Complaint of Hostile Work Environment, Defendants failed to interview Drake.

79. In response to Drake's First Complaint of Hostile Work Environment, Defendants failed to interview Moore.

80. In response to Drake's First Complaint of Hostile Work Environment, Defendants failed to interview other Select Energy Employees.

81. In response to Drake's First Complaint of Hostile Work Environment, Defendants failed to get a written statement from Drake.

82. In response to Drake's First Complaint of Hostile Work Environment, Defendants failed to get a written statement from Moore.

83. In response to Drake's First Complaint of Hostile Work Environment, Defendants failed to get a written statement from other Select Energy employees.

84. Defendants did not investigate Drake's First Complaint of Hostile Work Environment.
85. Select Energy retaliated against Drake after he made reports of racial discrimination.
86. Select Energy supervisors unfairly and falsely gave Drake negative reviews of his work in retaliation for his reports of racial discrimination. ("Defendants Retaliation")
87. After Defendant's Retaliation, Drake made multiple complaints to Defendants in December 2021 and January 2022.
88. On or about February 21, 2022, Defendants terminated Drake's employment.
89. Siddle falsely accused Drake of letting the tanks drain too low.
90. Drake demonstrated that it was not possible for him to leave the tanks too low.
91. Select Energy's termination of Drake's employment was an adverse employment action against him.
92. Select Energy did not have an overriding justification for Drake's dismissal.
93. Select Energy's cited reason for Drake's termination was pretextual.
94. Drake was discriminated against due to his race.
95. Drake was retaliated against for making complaints of discrimination in the workplace.
96. Drake was terminated due to his race and/or in retaliation for his opposition to discrimination in the workplace.
97. There was a causal connection between Drake's race and Defendants' adverse actions taken against Drake.
98. Defendants' purported reason for Drake's termination is pretext for race discrimination and/or retaliation for opposition to discrimination.

99. As a result of being discriminated against during his employment with Select Energy, and being terminated from Select Energy, Drake has had and continues to accrue damages based thereupon.

100. As a result of Defendants acts and omissions, Drake has suffered, and will continue to suffer, damages, including economic, emotional distress and physical sickness damages.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. § 4112, et seq.**

101. Drake restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

102. Drake is African American, and thus is in a protected class for his race.

103. R.C. § 4112 et seq. provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

104. Defendants treated Drake differently than other similarly situated employees based upon his race.

105. On or about February 21, 2022, Defendants terminated Drake's employment without just cause.

106. Alternatively, Defendants' cited reason for Drake's termination was pretext.

107. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

108. Drake's race was a determinative factor in Defendants' decision to terminate his employment.

109. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by treating Drake differently from other similarly situated employees outside his protected class.

110. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying its employment policies in a disparate manner based on Drake's race.

111. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by applying its disciplinary policies in a disparate manner based on Drake's race.

112. Defendants violated R.C. § 4112.02 and R.C. § 4112.99 by terminating Drake based on his race.

113. As a direct and proximate result of Defendants' acts and omissions, Drake has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII**

114. Drake restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

115. Drake is African American, and thus is in a protected class for his race.

116. Title VII provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

117. Defendants treated Drake differently than other similarly situated employees based upon his race.

118. On or about February 21, 2022, Defendants terminated Drake's employment without just cause.

119. Alternatively, Defendants' cited reason for Drake's termination was pretext.

120. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

121. Defendants violated Title VII by treating Drake differently from other similarly situated employees outside his protected class.

122. Defendants violated Title VII by applying its employment policies in a disparate manner based on Drake's race.

123. Defendants violated Title VII by applying its disciplinary policies in a disparate manner based on Drake's race.

124. Defendants violated Title VII by terminating Drake based on his race.

125. As a direct and proximate result of Defendants' acts and omissions, Drake has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT III: RETALIATORY DISCRIMINATION IN VIOLATION OF TITLE VII**

126. Drake restates each and every prior paragraph of this complaint, as if it were fully restated herein.

127. As a result of the Defendants' discriminatory conduct described above, Drake complained about the discrimination he was experiencing.

128. Subsequent to Drake's reporting of discrimination against him to his employer, Drake's employment was terminated.

129. Defendants' actions were retaliatory in nature based on Drake's opposition to the unlawful discriminatory conduct.

130. Pursuant to Title VII, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

131. Drake suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Title VII.

132. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Drake, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: RETALIATORY DISCRIMINATION IN VIOLATION OF R.C. § 4112, *et seq*.**

133. Drake restates each and every prior paragraph of this complaint, as if it were fully restated herein.

134. As a result of the Defendants' discriminatory conduct described above, Drake complained about the discrimination he was experiencing.

135. Subsequent to Drake's reporting of discrimination against him to his employer, Drake's employment was terminated.

136. Defendants' actions were retaliatory in nature based on Drake's opposition to the unlawful discriminatory conduct.

137. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

138. Drake suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

139. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Drake, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT IV: HOSTILE WORK ENVIRONMENT ON THE BASIS OF RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

140. Drake restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. During his employment with Defendants, Drake was subjected to offensive and harassing conduct by Defendants based on his race.

142. Defendants knew or should have known of the harassing conduct against Drake by Moore and/or other Select Energy employees.

143. Defendants condoned, tolerated and ratified this harassing conduct.

144. This harassing conduct was severe and/or pervasive.

145. This harassing conduct was offensive to Drake.

146. This harassing conduct interfered with Drake's ability to perform his job duties.

147. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Drake.

148. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Drake.

149. As a direct and proximate result of Defendants' conduct, Drake suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Drake demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendants to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

iii. Requiring removal or demotion of all supervisors/managers who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendants to expunge Drake's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Drake for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Drake's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*__________
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com

*Attorney for Plaintiff*

**JURY DEMAND**

Plaintiff demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*________
Trisha Breedlove (0095852)